**IN THE COURT OF APPEALS OF TENNESSEE**

**AT KNOXVILLE**

| | |
|---|---|
| ALVIN UNDERWOOD, | ) C/A NO. 03A01-9809-CV-00288 |
| | ) |
| Appellant/Cross-Appellee, | ) KNOX CIRCUIT |
| | ) |
| v. | ) HON. WHEELER ROSENBALM, |
| | ) JUDGE |
| CHARTER FEDERAL SAVINGS | ) |
| BANK, | ) AFFIRMED |
| | ) AND |
| Appellee/Cross-Appellant. | ) REMANDED |

DAVID DAY, Cookeville, for Appellant/Cross-Appellee.

GREGORY C. LOGUE and MICHAEL J. KING, WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC., Knoxville, for Appellee/Cross-Appellant.

**O P I N I O N**

Franks, J.

This is an appeal in an action for damages for wrongful execution, where the jury awarded $105,000.00 in compensatory damages, and $420,000.00 in punitive damages, and the Trial Judge suggested a remittitur of $200,000.00 on the punitive damages award.

By way of background, in 1988, appellee Charter Federal Savings Bank ("Charter Federal")[1] brought suit against Randy Underwood to collect on two promissory notes. Default judgment was taken as to Randy and a garnishment was issued to his father, plaintiff Alvin Underwood d/b/a Underwood Automotive Parts.

Alvin answered the garnishment, stating that Randy did not work for him, but the answer which was filed with the Clerk apparently did not immediately

---

[1]Charter Federal was later acquired by First American Bank.

appear in the file at the Clerk's office. On August 5, 1988, Charter Federal petitioned for a *scire facias* to secure a conditional judgement against Alvin based upon his failure to answer the garnishment. The petition was served upon Randy, who apparently did not advise Alvin of its issuance.

On September 6, 1988, a final judgment was entered against Alvin, and on October 17, 1988, representatives from Charter Federal and the Knox County Sheriff's Department went to Underwood Auto Parts and levied on vehicles, tools, auto parts and other items at the business location. On October 26, Alvin filed a motion to set aside the judgment, contending that he had properly answered the garnishment, but on November 9, 1988, the seized property was sold. The Chancery Court granted Alvin's motion to set aside the judgment and awarded him the proceeds of the sale, finding that Alvin had timely answered the garnishment. This court, on appeal of that action, affirmed.[2]

This suit followed.

Charter Federal contends that it is entitled to a new trial based on juror misconduct. One juror apparently maintained a checking account with First American that had become overdrawn. At the time of the trial he no longer maintained the account, although a collection agency was apparently still seeking to recover a deficiency from the juror. During voir dire, the trial court asked all prospective jurors the following question:

> Are any of you employed at this time or any family member
> employed by the bank in any capacity or do any kind of business
> with the bank, such as selling supplies to the bank or providing
> any kind of services to them for which you receive compensation
> or payment?

Charter Federal contends that this juror's failure to respond to this

---

[2]

*Charter Federal Savings Bank v. Underwood*, (Tenn. App. Eastern Section filed May 3, 1991.)

2

question and others constitutes juror misconduct.

Failure to disclose information during voir dire must be based upon a material question reasonably calculated to produce an answer. *State v. Atkins*, 867 S.W.2d 350, 356 (Tenn.Crim.App. 1993). The Trial Court carefully considered this issue, and said:

> The Court's looked very carefully at the questions that it propounded to perspective jurors and must conclude that those questions were designed to elicit information from jurors about their connection at the present time, that is at the time of the trial, and that the Court in no instance delved into any prior connections, although the parties through their counsel did ask about some prior connections including whether any juror had been sued by a bank.
>
> But it does not appear that [the juror in question] or other jurors were specifically asked about controversies between them and other banks other than lawsuits, and the Court simply cannot conclude from the questions that were propounded and the responses given by the prospective jurors that the questions that the Court asked about in connections between jurors and the bank were sufficient to cause [the juror in question] to reveal his prior experience with the defendant in this case, and the Court does not believe that there has been a showing of any intent or neglect on his part to conceal his prior banking experience with the defendant, and must most respectfully conclude that there's been no showing of juror bias sufficient to impugn the verdict in this case and grant a new trial.

The record supports the Trial Judge's conclusions. Some questions directed specifically to other jurors and not the juror in question, arguably could have provoked a response from this juror, but none of those questions addressed this juror's course of conduct with the bank. We find no merit in this issue.

Charter Federal further contends that the Trial Court improperly allowed the plaintiff to relitigate certain issues, and insists that an issue may not be relitigated if it is "actually and necessarily determined" in a former action between the parties as ruled in *King v. Brooks*, 562 S.W.2d 422, 424 (Tenn. 1978).

Charter Federal contends the Trial Court erred in admitting evidence concerning its alleged wrongful conduct regarding the answer to the garnishment. In

3

the original Chancery Court action, both the Trial Judge and this Court determined that plaintiff timely filed an answer and that the answer was legally sufficient. These were the only issues that were actually and necessarily determined. In its findings, the Chancery Court did note that a *scire facias* was issued "upon the failure of an Answer of Underwood Auto Parts to be docketed in the Court's file . . .". Additionally, the Chancellor noted that Charter Federal presented evidence that the answer was not in the file or computer system when judgment was originally entered. The Court stated that "[h]owever this may be," plaintiff did answer. Thus, the presence of the answer in the file was not a necessary finding. Further, evidence about Charter Federal's wrongful conduct or independent knowledge of the answer was not necessary to determine whether the Plaintiff had actually answered the garnishment. Accordingly, the plaintiff was entitled to introduce the disputed evidence.

Charter Federal also argues that the Trial Court erred in permitting evidence concerning sufficiency of service of process and other procedural defects. As noted previously, these issues were not actually and necessarily determined in the prior proceeding. Thus, the Trial Court did not err in permitting this testimony.

Charter Federal maintains that it is entitled to a new trial because the jury's award was excessive. First, it argues that the evidence does not support the jury's award of $105,000.00 in compensatory damages. Plaintiff claimed damages based upon the value of the inventory, equipment sold, lost profits, damage to reputation and emotional distress. The record reflects that the Trial Judge carefully scrutinized the award and properly fulfilled its duty to act as the thirteenth juror and approved the jury's verdict. Charter Federal presented its own evidence, including expert testimony, concerning damages. The jury found plaintiff's claims to be credible and awarded damages accordingly.

The record contains sufficient material evidence of damages to support

4

the jury's verdict, and we affirm.

Charter Federal further argues that the plaintiff failed to mitigate his damages because he did not stop the execution sale from going forward. The plaintiff believed that allowing the sale to continue would be better because his inventory and equipment had been damaged after the seizure. Charter Federal had the burden of proof on the issue of mitigating damages. *Price v. Osborne*, 147 S.W.2d 412 (Tenn.App. 1940), and the jury was properly instructed on this issue and apparently believed the plaintiff acted properly. The Trial Court did not err in approving the award of compensatory damages.

Both parties have appealed the award of punitive damages. Plaintiff contends that the damages as remitted were insufficient, while Charter Federal argues that punitive damages were not justified or were excessive. To be entitled to punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted either intentionally, fraudulently, maliciously or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). Additionally, *Hodges* lists factors to consider in assessing punitive damage awards. The record shows the Trial Court followed the requirements of *Hodges* to decide whether punitive damages were justified. The Court considered "the manner in which the plaintiff's property was levied upon and the conduct of the parties, particularly the defendant following that levy, and after defendant was advised that the levy was inappropriate" in determining that the evidence met the criteria of *Hodges*. The record supports the Trial Judge's conclusion finding that punitive damages were justified in this case.

The Trial Court is required to review the jury's award of punitive damages and set forth reasons for its decision. In this case, the Trial Court reviewed the evidence supporting an award of punitive damages in light of the factors stated in *Hodges,* but plaintiff argues the Trial Court did not properly state its reasons for

5

remitting the award. In analyzing the factors of *Hodges,* the Trial court noted mitigating circumstances. For example, the Court noted there was no specific evidence that Charter Federal profited from its conduct and the plaintiff's answer was not in the file before the levy occurred.

The Trial Court properly analyzed the jury's award and set forth its reasons for suggesting a remittitur. The award, as remitted, retains the integrity of the jury's verdict. *See Guess v. Maury*, 726 S.W.2d 906 (Tenn.App. 1986). We affirm the judgment of punitive damages as remitted.

Finally, plaintiff argues that the Trial Court committed error in connection with its suggestion of a remittitur of the punitive damages award from $420,000.00 to $220,000.00. The plaintiff claims that the Trial Court erroneously gave him a choice of accepting the remittitur of punitive damages, or a new trial on all issues, *including liability*. We believe the plaintiff has misconstrued what the Trial Court did in this case.

The Trial Court directed that its memorandum opinion be incorporated into its Order addressing the defendant's post-trial motions. That Opinion provides, in part, as follows:

> . . . the Court is constrained to conclude that the award of compensatory damages in the amount of $105,000 is warranted by the evidence in this case and that the evidence does not preponderate against that finding by the jury, and the court approves that verdict of $105,000 for compensatory damages in this case in all respects.

The Court's Order makes three decrees:

> 1. Defendant's Motions except as to remittitur are denied, and the *Court affirms the verdict of $105,000.00 in favor of the Plaintiff for compensatory damages.*
>
> 2. The Court orders that punitive damages are appropriate in this case, but suggests a remittitur in favor of the Defendant of $200,000.00, thus making the punitive damage award to be the sum of $220,000.00.
>
> 3. *The Plaintiff shall have fifteen (15) days from the entry of this Order*

6

*in which to accept the suggestion of remittitur or a new trial shall be granted.*

(Emphasis added). While the order does not expressly limit the scope of the new trial to the issue of punitive damages, we believe a fair reading of the entire order indicates that this is what the Court intended to do. It is unlikely the Judge would have approved the verdict as the thirteenth judge only to conditionally grant a new trial. Moreover, assuming *arguendo* plaintiff's interpretation of the judgment is correct, such judgment would be in the Trial Court's discretion. This issue is without merit.

The judgment of the Trial Court is affirmed, and the cost of the appeal is assessed one-half to each party, and the cause is remanded.

_____
Herschel P. Franks, J.

CONCUR:


_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.

7